**KIERULFF ASSOCIATES, Plaintiff,**

v.

**LURIA BROTHERS & COMPANY, Inc., and Lipsett Steel Products, Inc., Defendants.**

United States District Court
S. D. New York.
March 3, 1965.

John M. Calimafde, Paul H. Blaustein, Hopgood & Calimafde, New York City, for plaintiff.

Brumbaugh, Free, Graves & Donohue, New York City, for defendant Luria Brothers & Co., Inc.; Frederick C. Carver, New York City, of counsel.

LEVET, District Judge.

The defendant, Luria Brothers & Company, Inc. (hereinafter "Luria") asks the court to dismiss this action for patent infringement against it on the ground that the statutory venue requirements are not satisfied in the Southern District of New York.

Venue in a patent infringement suit is governed by 28 U.S.C. § 1400(b) (1958):

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

 The residence of a corporation under Section 1400(b) is the state of incorporation. Fourco Glass Co. v. Transmirra Prods. Corp., 353 U.S. 222, 77 S. Ct. 787, 1 L.Ed.2d 786 (1957). The defendant Luria is incorporated in Delaware. (Complaint, para. III; Affidavit of Eugene J. Donohue, Vice President of Luria (hereinafter "Donohue Aff." 1) Therefore, venue in the Southern District of New York must be based on the fact of an established place of business here *and* acts of infringement here. The defendant Luria concedes that its principal place of business is in this district (Donohue Aff. 1) The only dispute, therefore, centers on whether Luria has committed acts of infringement in this district.

The acts which constitute infringement of a patent are set forth in 35 U.S.C. § 271 (1958) and including making, using or selling any patented invention and actively inducing infringement. See Watsco, Inc. v. Henry Value Co., 232 F.Supp. 38, 42 (S.D.N.Y.1964); Carolyn Chenilles, Inc. v. Ostow & Jacobs, Inc., 168 F. Supp. 894, 897 (S.D.N.Y.1958).

The patent which is alleged to have been infringed claims a chute structure for use in loading scrap metal in the hold of a ship.

Since the date of issuance of the patent, December 29, 1959, Luria has not made, used or sold any chute for loading scrap metal aboard any ship in the Southern District of New York. (Donohue Aff. 1) The plaintiff, Kierulff Associates, relies on the inducement of acts of infringement by Luria to establish venue here. The alleged acts of inducement stem from the use by Lipsett Steel Products, Inc. (hereinafter "Lipsett") in New Jersey of a chute similar to the patented chute. Lipsett is a defendant in this case. (Deposition of Morris E. Lipsett, President of Lipsett and Vice President of Luria (hereinafter "Lipsett Dep." 21)

Plaintiff urges that Luria is guilty of inducement in New York by virtue of the interrelationship of Luria and Lipsett, and particularly Luria's planning and direction of the infringing acts. Carolyn Chenilles, Inc. v. Ostow & Jacobs, Inc., 168 F.Supp. 894 (S.D.N.Y.1958); Jones v. RCA, 131 F.Supp. 82, 84 (S.D.N.Y. 1955). In Carolyn Chenilles, Inc. v. Ostow & Jacobs, Inc., supra, the case principally relied on by plaintiffs, the court sustained venue of a corporation located in New York because of its control over a Georgia corporation employing an infringing machine. The court found "that the affairs of the two corporations are completely intermingled" and that the New York corporation made the "ultimate selection of the type of product to be manufactured (a choice which would undoubtedly govern the type of machine and processes to be used)." Id. 168 F. Supp. at 897.

The nature of the relationship of Luria and Lipsett appears from the Lipsett Deposition and an affidavit by Mr. Lipsett (hereinafter "Lipsett Aff.") to be as follows:

(1) Lipsett and Morris E. Lipsett have offices at 161 East 42 Street, New York City. (Lipsett Dep. 60) Luria has offices at the same address. (Lipsett Dep. 63–64)

(2) Lipsett has been a wholly-owned subsidiary of Luria since 1948. (Lipsett Dep. 3, 11, 55)

(3) Morris E. Lipsett is President of Lipsett, Vice President of Luria and President of the Lipsett Division of Luria which is separate from Lipsett. (Lipsett Dep. 3–4, 41) One member of the Board of Directors of Lipsett is also a member of the Luria Board and a Vice President of Luria. (Lipsett Dep. 50–51) Another member of the Lipsett Board is a Vice President of Lipsett and in charge of the Luria operating yards. He is paid by Luria. (Lipsett Dep. 42, 43)

(4) Lipsett owns an "inland" yard in Brooklyn and a yard at Port Newark, New Jersey. (Lipsett Dep. 44–46) Luria buys some scrap for delivery to the Brooklyn yard. Lipsett may pay for such scrap and be reimbursed. (Lipsett Dep. 67) This scrap is then transported from the Brooklyn yard to the Port Newark yard where it is loaded aboard ship via the chute in issue. (Lipsett Dep. 45, 67–68) The bulk of the business, however, involves shipments from Port Newark. (Lipsett Dep. 58) Activities at the Port Newark yard are supervised by Hyman Feinberg, Vice President of Lipsett. Mr. Feinberg holds no position with Luria. (Lipsett Aff.)

(5) The scrap metal which is stored in the two yards is owned by Luria. (Lipsett Dep. 65) Luria also decides on and orders the transfer of the scrap from the Brooklyn yard, usually by telephone. (Lipsett Dep. 47, 48) Lipsett has never refused such a request. (Lipsett Dep. 57–58) Lipsett bills Luria for the services it renders. (Lipsett Dep. 48, 65) The sale and transportation of the scrap from Port Newark by ship after loading is arranged by Luria. (Lipsett Dep. 67–68)

(6) Lipsett's business comprises receiving and storing scrap and then loading it on ships. (Lipsett Dep. 68)

■ The dispositive issue on this motion is whether Luria exercised such control over Lipsett that it can be said to have planned, directed or induced acts of infringement by Lipsett in connection with the use of a patented chute in Port Newark. Only if the answer is in the affirmative can venue against Luria be sustained in this district. Moreover, this same issue will ultimately determine whether Luria has infringed the patent in issue if the Port Newark chute is found to be covered by the patent. Where venue and the merits of an action are intertwined, it is often better to wait until trial where a full presentation of the issue can be made, rather than rule preliminarily on a motion. Moore, 2 Federal Practice 2275 (2d ed. 1964).

■ In order to properly determine this issue, a full disclosure of the facts relating to the day-to-day operations of Lipsett, the degree of intertwining of the two companies' affairs and the extent to which Luria controlled the choice of the accused chute are necessary. Carolyn Chenilles, Inc. v. Ostow & Jacobs, Inc., supra. After reviewing the evidence before me now, I am convinced that the question should await trial.

The motion is denied.

Settle order on notice.